UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

UNITED STATES OF AMERICA          )
                                  )
          Plaintiff,              )          No. 13-CR-135-S-DCR-REW
                                  )
v.                                )
                                  )          RECOMMENDED DISPOSITION[1]
DAVEY WAYNE BRUMMETT,             )
                                  )
          Defendant.              )

*** *** *** ***

The Court assesses a motion to suppress filed by Defendant, Davey Wayne

Brummett. DE #34 (Motion).  Brummett faces felon-in-possession and possession of an

unregistered firearm charges related to alleged conduct in Lincoln County on May 9,

2013.  DE #18 (Superseding Indictment). Additionally, he faces one count of theft of

Social Security Administration funds from on or about October 1, 2010 to October 31,

2013, also in Lincoln County. *Id.*  The suppression motion targets execution of two state

search warrants. Defendant first challenges the execution of a warrant at his residence on

May 9, 2013.  His second challenge relates to a May 14, 2013 vehicle search. As to the

May 9 search, Brummett contends that the search warrant affidavit lacked sufficient

information to support a probable cause finding.  DE #34-1 at 3-9 (Memorandum).  He

further argues that the good faith exception to the exclusionary rule articulated by the

Supreme Court in *United States v. Leon*, 104 S. Ct. 3405 (1984), does not apply.  DE

---

[1] The motion has been submitted to the undersigned for a recommendation pursuant to
the District Judge's Standing Referral Order for criminal actions.  DE #2 (Standing
Referral Order).

#34-1 (Memorandum) at 7.  As to the May 14 search, although not criticizing the warrant itself, Brummett alleges that officers seized him and forcibly returned his truck onto the property for purposes of warrant execution. Alternatively, he asserts that he parked the subject truck on his neighbor's property, not his own, and that the truck was thus not within the scope of the warrant. Finally, Movant alleges that officers did not otherwise have a valid basis to search the vehicle. *Id.* at 10-11.

The United States filed a response in opposition, DE #38 (Response), and Defendant replied. DE #39 (Reply). The Court conducted an evidentiary hearing on March 18, 2014, with respect to Defendant's argument about the May 14 warrant. Because the challenge to the May 9 warrant calls only for four corners review of the warrant documents, the Court did not take proof on the issue but heard argument from the parties.[2]

The Court recommends **DENIAL** of the motion to suppress.  A substantial basis supported warrant issuance on May 9, 2013, and, in any event, the exclusionary rule does not here apply under current standards.  As to the May 14, 2013 warrant, the Court finds that Defendant volitionally returned his vehicle to an area within the physical scope of the warrant and that police acted reasonably. There is no justification here for suppression.

I.      **Background**

On May 9, 2013, Kentucky State Police (KSP) Detective Rodney Wren responded to an alleged shooting at 919 Simpson Road in Lincoln County. Upon arrival, Detective Wren learned that Defendant's father, Danny Brummett, shot his (Danny Brummett's)

---

[2] Additionally, at the hearing, the parties agreed that a hearing on Brummett's first argument was not necessary. Assessment for probable cause encompasses only the warrant application materials. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

granddaughter Monique and shot at his wife, Kay, at the 919 Simpson Road property.

Danny Brummett (father of David) had then traveled to nearby 1414 Simpson Road,

Defendant's residential and business premises, and shot himself. Wren ultimately applied

for and obtained a search warrant for the premises at 1414 Simpson Road.[3]  The affidavit

contains the following averments:

> I responded to a shooting this morning involving Kay Brummett and Monique Brummett at the residence located at 919 Simpson Road in the Crab Orchard community. Danny Brummett shot his grand daughter [*sic*] Monique and shot at his wife Kay at the residence. Danny Brummett later went to his son David Brummett's residence located at 1414 Simpson Road and shot himself. During the investigation a stolen trailer was discovered behind the residence located at 919 and during interviews with Kay and Monique I was told that several more stolen items such as trailers, four wheelers, riding lawn mowers and firearms were located on the property of Danny and David Brummett. I was told by Kay and Monique Brummett that several individuals would bring items to Danny and David and they where [*sic*] told that these items were stolen by both Danny and David. I was also told that there are stolen guns in several safes located in the residence of 1414 Simpson Road.

DE #34-2 (Warrant Affidavit); DE #38-2 (Warrant Affidavit).

Lincoln County District Judge Janet Booth issued the requested search warrant for

David Brummett's premises. DE #34-2 (Warrant); DE #38-2 (Warrant). Law

enforcement recovered, among other items, 5 trailers of differing varieties, 150 firearms,[4]

a skid loader, various tools, and SD camera chips. DE #34-2 (Warrant Inventory).

Detective Wren testified that, subsequent to warrant execution, further investigation

revealed as stolen additional items observed but not seized on May 9. Wren thus applied

for a second search warrant for Defendant's premises on May 14, 2013.  That warrant

---

[3] Wren simultaneously obtained a search warrant for Danny Brummett's property, 919 Simpson Road.  *See* DE #38-1 (Warrant).
[4] Wren did not seize black powder guns mounted on the wall, a gun belonging to Brummett's significant other contained in a lock box to which she possessed the only key, or any ammunition (of which there was, per the hearing, a significant amount).

authorized law enforcement to search the 1414 Simpson Road residence and "[a]ll vehicles and trailers located at the residence or property."[5] DE #34-3 (Warrant); DE #38-3 (Warrant).

Officers traveled to 1414 Simpson Road on May 14 during the day to execute the warrant. No one was home when they arrived; the group included multiple police units and 7 officers, with at least some in tactical gear. Soon, Defendant drove past the property, which sits on a winding and isolated road in Lincoln County. Wren, standing on or near the front porch of the home, recognized the vehicle and called out to Kentucky Vehicle Enforcement (KVE) officers: "There he goes. Get him."[6] Before the officers even had time to react, Defendant stopped, backed up his vehicle, and pulled into the gravel entrance for the 1414 Simpson Road property. Wren estimated that Brummett angled the truck approximately 45 degrees to the home, parking about 45-50 feet from the front of the residence. Brummett exited the vehicle and walked toward Wren. Wren immediately arrested Brummett[7] for state felon-in-possession charges[8] and advised Brummett that he was there to execute a second search warrant on the property.

Per his testimony, Wren did not perceive Brummett as a risk of flight or danger and thus did not handcuff or formally restrain him. Two officers accompanied Brummett

---

[5] Defendant does not challenge the sufficiency of the May 14 warrant affidavit itself, so the Court does not recount Wren's averments in that document.

[6] Wren first testified that he said "stop that vehicle." His report phrased it as "Go after him."

[7] It is not entirely clear whether Wren had a warrant for Brummett's arrest. In the detention context, the record indicates a warrant. DE #14 (Detention Order) at 3. The testimony here was indeterminate. It was clear, however, that Wren arrested Brummett expressly for "the firearms . . . taken with the search warrant on May the 9th." DE #34-4 (Uniform Offense Report).

[8] Per Wren's Uniform Offense Report, he was unable to confirm Brummett's status as a felon during the prior search. He thus did not obtain an arrest warrant until May 14, when he applied for the second search warrant. Wren testified to having an arrest warrant in hand on May 14.

while on the property, but he remained otherwise unrestrained. Brummett's significant

other indicated that she needed the car to go to a doctor's appointment. Wren advised that

she could leave following a search of the vehicle,[9] and Wren then searched the truck and

found (and seized) $26,000 cash in the center console. The woman then declined to leave,

despite being free to do so, and stayed on the property for the remainder of the search.

A federal grand jury indicted Defendant in October 2013 for being a felon-in-

possession and for possession of an unregistered firearm. DE #1 (Indictment). The grand

jury returned a superseding indictment in December 2013, adding one count of theft of

SSA funds. DE #18 (Superseding Indictment). That count references, by forfeiture, the

seized $26,000. Defendant's motion is ripe for review.

## II.     Analysis

### A.      *A substantial basis validates the May 9, 2013 search warrant.*

The Fourth Amendment mandates that "no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation." U.S. CONST., amend. IV. Probable

cause consists of "reasonable grounds for belief, supported by less than prima facie proof

but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.

1990).  To determine probable cause, an issuing magistrate must examine the totality of

the circumstances and find "a 'fair probability' that evidence of a crime will be located

on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th

Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)).  A

supporting affidavit must sufficiently demonstrate the existence of a "nexus between the

---

[9] Detective Wren also conclusorily opined that, in his training and experience, individuals with large quantities of firearms, *i.e.,* the 150 guns seized during the May 9 search, usually keep firearms close at all times, either in a vehicle or on their person.

place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).

In the suppression context, when evaluating whether a warrant application presented probable cause, a reviewing court must accord "great deference" to the issuing judicial officer's determination. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). Such deference ensures than "an issuing [judge's] discretion [will] only be reversed if it was arbitrarily exercised." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). The reviewing court must uphold the issuing judge's probable cause determination if a "substantial basis" existed for the judge to conclude "that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 103 S. Ct. 2317, 2331 (1983); *Allen*, 211 F.3d at 973.

Additionally, line-by-line scrutiny of the supporting affidavit is inappropriate, *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citing *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)), and the reviewing court must limit its analysis to the "information presented in the four corners of the affidavit." *Id.* at 306; *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). When the search at issue occurred pursuant to a warrant, the defendant has the burden of establishing a prima facie case that the search was illegal. *United States v. Murrie*, 534 F.2d 695, 697-98 (6th Cir. 1976); *see also United States v. Franklin*, 284 F. App'x 266, 275 (6th Cir. 2008) (Clay, J., dissenting).

Here, Brummett's primary attack on the affidavit—that it fails to adequately allege that he possessed stolen goods at his residence—misperceives the affidavit's

content. Movant alleges that the averments in the affidavit feature two levels of hearsay. DE #34-1 (Memorandum) at 6-7.  Under Defendant's interpretation of the affidavit, Kay and Monique Brummett, the identified sources of information, were told by unnamed *third-parties* that Defendant and his father possessed stolen goods at their residences. *See* DE #34-2 (Warrant Affidavit); DE #38-2 (Warrant Affidavit) ("I was told by Kay and Monique Brummett that several individuals would bring items to Danny and David and they where [*sic*] told that these items were stolen by both Danny and David."). Brummett denies that Kay and Monique had any personal knowledge about the status of any goods at the residences. DE #34-1 (Memorandum) at 5. Per Brummett's theory, these uncorroborated statements are insufficient to support a probable cause finding and render the affidavit "bare bones." In Movant's view, Kay and Monique Brummett simply conveyed unattributed information to Wren.

The United States responds that, contrary to Movant's assertions, Defendant and his father, not third-parties, themselves informed Kay and Monique Brummett that third-parties brought them stolen goods. DE #38 (Response) at 7. The Government contends that Brummett misperceives the text and that the women's statements are sufficient to establish probable cause. *Id.*  The United States additionally defends based on Wren's statement that police located a stolen trailer property on Danny Brummett's property. *Id.*; *see also* DE #34-2 (Warrant Affidavit); DE #38-2 (Warrant Affidavit) ("During the investigation a stolen trailer was discovered behind the residence located at 919 and during interviews with Kay and Monique I was told that several more stolen items such as trailers, four wheelers, riding lawn mowers and firearms were located on the property of Danny and David Brummett.").

Brummett's interpretation strains linguistic reality. The key is the clause "they where [*sic*] told that these items were stolen by both Danny and David." The defense says "they" means the unknown individuals allegedly bringing stolen property to the Brummetts; the prosecution says "they" refers to Danny and David themselves. The Court rejects the defense construction. It is implausible to think that Danny and David would receive stolen property from individuals and **then** tell those delivering individuals the property was stolen. Common sense indicates that Danny and David instead received stolen property and "told" Kay and Monique that the property was stolen. The paragraph's flow confirms this as Wren repeatedly cited Kay and Monique as his information sources and related no interaction between the sources and any unknown individuals. The pronoun "they," by logic and context, plainly refers only to these women, the source of information for Wren.[10]

The state judge, entitled to draw rational inferences from the materials presented, surely rested warrant issuance on a reasoned and substantial foundation. The Court notes the following elements:

a.  As already discussed, the affidavit (from a 9 year KSP veteran) indicates that David Brummett directly admitted to Kay and Monique Brummett that property brought to his premises was stolen.

b.  Wren got the salient information from two identified women in a face-to-face interview. The witnesses thus had a personal stake in the credibility of their information, and Wren could assess that credibility in person. The women were crime victims, one of whom had suffered a gunshot wound from Danny Brummett. *See United States v. Hodge*, 714 F.3d 380, 385 (6th Cir. 2012) ("Statements from a source named in a warrant application . . . are generally sufficient to establish probable cause without further corroboration because

---

[10] Though outside the four corners, Wren confirmed at the hearing, regarding this language, that the women told him that Danny and David confirmed directly to them that the items were stolen.

the legal consequences of lying to law enforcement officials tend to ensure reliability.") (citation omitted); *United States v. DeQuasie*, 373 F.3d 509, 523 (4th Cir. 2004) (referencing value of "face-to-face" contact because of witness accountability and officer's "opportunity to assess . . . credibility and demeanor"); *id.* at 523 n.21 (referencing appropriate relaxation of informant scrutiny "if the informant is an identified victim") (citation omitted).

c.  The women were family members of both Brummetts. This heightens credibility because it endorses a relationship and basis for home access and knowledge. The inference of relationship intimacy increases because of the claimed admission—by the men to the women—of stolen property receipt.  A defendant would not casually admit to felony conduct, and David Brummett's statement to the women is indicative of a relationship of familiarity and trust.

d.  Wren was on the scene investigating a series of violent events, including Danny Brummett's shooting spree at 919 Simpson Road and self-inflicted wound at 1414 Simpson Road. Wren cited the close family connection between the players, and the warrants, by description, show the property to be separated by only .5 miles. That Danny Brummett went from his residence to his son's, before the suicide attempt, further solidifies the association between the people and places.

e.  Wren referenced a corroborating stolen trailer allegedly found at 919 and recited detailed stolen property categories ("stolen items such as trailers, four wheelers, riding lawn mowers and firearms") the women described as then existing at both property locations.

f.  The women indicated intimate knowledge of 1414 Simpson Road; both stated that multiple "stolen guns" were, at that time, "in several safes located in the residence of 1414 Simpson Road."  The language repeatedly used the present tense or indicated currency when referencing the existence of stolen property on the scene.

g.  Plainly at least one firearm had been on the scene. Further, the witnesses' citation to "several safes" has at least two values. First, it is a detail that bolsters credibility by indicating access to household secrets.  Second, a "safe" by definition is an indicator of worth and permanence to the property holder. This fortifies the reasonableness of the issuing judge's belief that stolen firearms would, at that point, exist at 1414 Simpson Road.

To be clear, the affidavit is not without flaws. The document provides no basis

for the belief that the referenced stolen trailer located behind the residence at 919

Simpson Road was in fact stolen. The affiant does not state a basis for identifying the various players or addresses. However, the Court must assess what is in an affidavit, not what fails to appear and must make a common sense assessment of the totality with proper deference. This affidavit suffices; the judge did not act arbitrarily.

In short, under the totality of the circumstances, and reviewing only the four corners of the subject affidavit, the Court finds that probable cause supported the warrant to search Defendant's property. The information in the affidavit gave the issuing judge a substantial basis for concluding that evidence of stolen property would be located in or around Defendant's residence at issuance.

>    **B.**     *Suppression otherwise would not apply.*

Even if probable cause did not support the warrant to search Defendant's person and home, the exclusionary rule here would not apply. The Supreme Court has repeatedly stated that suppression is not an automatic result of a Fourth Amendment violation. *Herring v. United States*, 129 S. Ct. 695, 700 (2009) ("The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies.") (citing *Gates*, 103 S. Ct. at 2324); *see also United States v. Master*, 614 F.3d 236, 242 (6th Cir. 2010). Here, the parties discuss application of the exclusionary rule in terms of *Leon*, the decision in which the Supreme Court articulated contours of a good faith exception to the exclusionary rule. *Leon*, 104 S. Ct. at 3420-21. Specifically, the Court there held that suppression is not an appropriate remedy where police conduct a search pursuant to and in reliance on a warrant later declared invalid, except in the following circumstances: (1) where the issuing judge was "misled by information in an affidavit that the affiant knew was false

or would have known was false except for his reckless disregard of the truth"; (2) where the issuing judge wholly abandoned his judicial role and acted merely as a rubber stamp for the police; (3) where the affidavit is so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable; or (4) where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 3421. Brummett labels the application "bare bones" and seeks to avoid *Leon* warrant validation.

Although the parties reference *Leon*'s standards, in recent decisions the Supreme Court has refined its analysis to broaden *Leon*'s application. *See United States v. Davis*, 690 F.3d 226, 251-53 (4th Cir. 2012); *Master*, 614 F.3d at 241-42. In *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011), for example, the Supreme Court explained that "[t]he [exclusionary] rule's sole purpose . . . is to deter future Fourth Amendment violations." Thus, according to the Court, "[w]here suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" *Id.* at 2426-27 (citing *United States v. Janis*, 96 S. Ct. 3021, 3032 (1976)). The Court further explained that while "[r]eal deterrent value is a 'necessary condition for exclusion,' . . . it is not 'a sufficient' one." *Id.* at 2427 (citing *Hudson v. Michigan*, 126 S. Ct. 2159, 2166 (2006)). The Court noted that exclusion exacts substantial social costs, as it "almost always requires courts to ignore reliable, trustworthy evidence . . . . And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment." *Id.* (internal citation omitted). Accordingly, the Court held that "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its

heavy costs." *Id.* In doing so, as recognized by the Sixth Circuit, the Supreme Court has "effectively created a balancing test" for determining whether evidence must be suppressed as a result of a Fourth Amendment violation. *Master*, 614 F.3d at 243; *United States v. Fugate*, 499 F. App'x 514, 519 (6th Cir. 2012).

In considering the deterrent benefits of exclusion, the Supreme Court has directed lower courts to focus on the culpability of the law enforcement conduct at issue. *Davis*, 131 S. Ct. at 2427 (citing *Herring*, 129 S. Ct. at 701). Where the police have acted with "'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* (citing *Herring*, 129 S. Ct. at 702); *see also Herring*, 129 S. Ct. at 702 ("[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."). Where police "conduct involves only simple, 'isolated' negligence," *Davis*, 131 S. Ct. at 2427-28 (citing *Herring*, 129 S. Ct. at 698), however, or where police have acted "with an objectively 'reasonable good-faith belief' that their conduct is lawful," *id.* at 2427 (citing *Leon*, 104 S. Ct. at 3413), the remedy of exclusion is not warranted. *Id.* at 2427-28. As succinctly summarized by the Supreme Court in *Herring*, "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." 129 S. Ct. at 702.

With respect to the May 9 search of Brummett's property, there is nothing in the record to suggest that law enforcement acted with deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.[11] The Court perceives no misconduct

---

[11] The "four corners" issue is more nuanced in the *Leon* context. The Sixth Circuit allows a reviewing court to consider more than the four corners ambit. Per *Frazier*, "a court

here. Indeed, Wren drafted and forthrightly presented the materials to the state judge, and that judge assessed for and found probable cause. The Court agrees with the assessment, but surely if the state court found any marginal deficiencies, it would have been up to that court to reject the warrant as submitted. *United States v. Kinison*, 710 F.3d 678, 685 (6th Cir. 2013) ("The magistrate could have concluded that the affidavit was insufficient and sent it back to the officers for further investigation. But that did not happen."). Absent a substantiated indication of impropriety by an involved officer, the submitting officer should be permitted to rely on the approval of an independent and neutral judge, just what happened here.

Undoubtedly, Wren could have improved the affidavit, which is almost always the case. Still, the affidavit undoubtedly set forth personal knowledge of contraband, attributed to two known and identified witnesses with situational credibility, and connected directly to the premises at issue. The affidavit included a direct admission by a target to involvement in stolen property. In sum, "there was simply no culpable police conduct to deter here. And the 'absence of police culpability dooms [a] claim' that evidence should be excluded." *Id.* at 687 (citation omitted). Simple drafting imperfection, if any there was here, is not the concern of the exclusionary rule. *United States v. Rose*, 714 F.3d 362, 363 (6th Cir. 2013). While the Court would prefer to have had corroboration of the basis, *e.g.,* for calling the 919 Simpson Road trailer stolen, that omission alone surely is not the misconduct that suggests, much less justifies, the high

reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavits to information that was known to the officer and revealed to the issuing magistrate." *Frazier*, 423 F.3d at 535-36. Here, the issuing magistrate simultaneously issued a search warrant for Danny Brummett's property, 919 Simpson Road. *See* DE #38-1 (Warrant). Thus, both warrant packets fairly fall within the scope of review.

cost of exclusion. The Court rejects suppression as a remedy irrespective of the probable cause finding.

C.     *Law enforcement did not seize Brummett, and any mistake about the true ownership of the gravel drive does not necessitate suppression.*

**1.   Law Enforcement did not seize Brummett.**

Defendant next challenges officers' execution of the May 14, 2013 search warrant. DE #34-1 (Memorandum) at 10-11. He does not challenge the warrant basis or its extension to vehicles on the premises; rather he claims his vehicle was not properly within the search ambit. *Id.* Movant claims that, when Wren yelled from the porch to KVE officers: "There he goes. Get him," officers seized Brummett and thus forced his vehicle onto the gravel drive. Alternatively, Movant alleges that if law enforcement did not seize him, the gravel drive on which he stopped his truck belongs to his neighbor and is off premises, effectively removing his vehicle from the scope of the warrant. *Id.* Additionally, Brummett alleges that no other valid basis existed to search the truck.[12]

The United States denies seizure, alleging that Defendant voluntarily stopped, backed up, and drove onto his property at 1414 Simpson Road. DE #38 (Response) at 14-15. Alternatively, the Government defends the search as lawful pursuant to arrest under *Arizona v. Gant*, 129 S. Ct. 1710 (2009). *Id.* The United States introduced into evidence at the hearing a copy of the property deed and multiple photos. *See* Government's Hrg. Ex. Nos. 3-4. Per the Government, the gravel drive at issue is Brummett's.

---

[12] Defendant does not allege that, if the vehicle was lawfully on his property, officers could not search it under the scope of the warrant. Such argument would plainly fail. *See United States v. Johnson*, 640 F.3d 843, 845 (8th Cir. 2011) ("A vehicle found on a premises (except, for example, the vehicle of a guest or other caller) is considered to be included within the scope of a warrant authorizing a search of that premises." (citations and internal quotation marks omitted)). Further, this warrant expressly extended to vehicles. *See* DE #34-2 (Warrant); DE #38-2 (Warrant) ("All vehicles and trailers located at the residence or property.")

The parties generally do not dispute the facts: while agents were at 1414 Simpson Road to execute both search and arrest warrants, Defendant drove past the gravel drive leading to his property. Multiple units were obvious on the property. Wren, standing on or near the porch, called out to officers to "stop" or "get" Defendant. Before agents could react, Defendant backed up in a "Y" turn and pulled onto the gravel drive, angled at approximately 45 degrees at a distance of 45-50 feet from the porch of the residence. Brummett exited the vehicle and approached the house, where Wren met and arrested him premised solely on the May 9 weapon possession. Defendant remained on the property unrestrained, though expressly under arrest, while officers searched the vehicle and the premises. Wren testified to his belief that Brummett stopped after overhearing Wren call out to officers, but no party developed the factual contours. The record does not reflect whether Brummett actually overheard Wren's directive to the other officers. Brummett testified but did not address that topic.

Federal law recognizes three types of "permissible encounters" between police and citizens:

> (1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause.

*United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008). Police must intentionally direct conduct toward a target for seizure of that target to occur. *See Brower v. County of Inyo*, 109 S. Ct. 1378, 1381 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control.").

Plainly, not every interaction between citizens and police involves a seizure. *See Terry v. Ohio*, 88 S. Ct. 1868, 1879 n.16 (1968). Instead, a seizure occurs only when a police officer terminates or restrains an individual's freedom of movement by means of physical force or a show of authority. *See Florida v. Bostick*, 111 S. Ct. 2382, 2386 (1991). The test generally applied by the Supreme Court queries whether a reasonable person, in view of all the surrounding circumstances, would have believed that he was not free to leave. *United States v. Mendenhall*, 100 S. Ct. 1870, 1877 (1980) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (footnote omitted)); *United States v. Young*, 707 F.3d 598, 602 (6th Cir. 2012) (quoting *Mendenhall*). Relevant factors in this analysis may include, among others: the threatening presence of several officers; the display of a weapon; some physical touching by the officer; or the use of language or tone of voice indicating that compliance is mandatory. *Id.*

In addition, the burden is on Brummett to show that some form of detention occurred. *See, e.g., United States v. Urrea*, 1990 WL 57303, at *2 (9th Cir. May 4, 1990) ("Urrea has not met his initial burden of showing that a stop occurred."). In the suppression context, the defendant, as an initial matter, must establish a basis for the motion. *See., e.g., United States v. Barr*, 454 F. Supp. 2d 229, 252 (E.D. Pa. 2006). Because a consensual encounter is not a seizure, the Fourth Amendment has no application or role in that scenario. *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997) ("The consensual encounter, however, is not a seizure and hence not governed by the Fourth Amendment[.]").

Conceptually, the issue here is whether police somehow intentionally and improperly forced Brummett to stop his car and move it onto the premises (and thus within the scope of the May 14 warrant). The defense does little to develop this argument legally; at the hearing, Brummett cited only *United States v. Gentry*, 839 F.2d 1065, 1069 (5th Cir. 1988) ("[F]orcibly leading a vehicle from a place outside the scope of the warrant to a place within its territorial coverage does not make its search permissible under the warrant."). The key, under that isolated line, is a determination of whether law enforcement forced Brummett onto the property or whether Brummett voluntarily pulled the truck into an area within warrant authority. *See United States v. Alva*, 885 F.2d 250, 252 (5th Cir. 1989) (discussing *Gentry* and noting: "[W]e have never foreclosed officials from searching vehicles voluntarily driven onto the premises . . . during the course of a valid search.").

The Court rejects Brummett's seizure theory on several grounds. First, though the language of *Gentry* sounds expansive, the case does not support its own proposition. *Gentry* involved search of vehicles within the perimeter of a farm, though far removed from the target residence. Police stationed at the perimeter detained persons arriving at the perimeter in anticipation of a drug deal at the residence. Authorities did move at least one vehicle prior to the search. The court, in its analysis, simply rejected the idea that a search warrant for a specified farm residence would extend to the perimeter of the farm, a distance .5 miles away. Thus, the verbiage Brummett cited was dicta, and the Court actually validated the searches based on free-standing probable cause. *Gentry* really is a case only about boundary definition. *United States v. Tamari*, 454, F.3d 1259, 1263 (11th

Cir. 2006) ("*Gentry* . . . limited its analysis to defining the physical boundaries of the search warrant in question.").

Here, to the extent the *Gentry* proposition might apply, no party alleges that Wren (or any other officer on scene) displayed any type of physical force. The question, then, is whether, under the totality of the circumstances, Wren's command to officers to "get him" constitutes a show of authority. Some authoritative police behavior is "so intimidating" that it nearly always effects a seizure. *United States v. Steele*, 782 F. Supp. 1301, 1309 (S.D. Ind. 1992) (collecting cases and citing examples of officers drawing a weapon, officers advising a person that he is a target of an investigation, and officers taking a passenger's travel ticket and advising the person authorities suspected him of carrying narcotics). An agent's verbal command, when heeded, may constitute a seizure. *Id.* 1309-10. Implicit in that, however, is an understanding that the individual heard and responded to the verbal command. Indeed, the "official show of authority" must be the catalyst for "the suspect's acquiescence." *United States v. Baxter*, 12 Fed. App'x 170, 172 (4th Cir. 2001).

Wren was standing on or near the porch of Brummett's home at the time he called out to KVE officers, a distance of approximately 45-50 feet from the roadway. No party established whether Defendant even heard Wren's directive to the other officers, let alone acted in response.[13]

_____

[13] Wren testified to his belief that Brummett stopped in response to overhearing his command, but the record does not reflect whether Defendant's windows were open or whether Defendant, in fact, heard that statement. Brummett was in his moving car, 50 plus feet away, and a tree line blocked at least part of the mesne space. He also reversed course between driveways, and that could mean he always meant to stop and perceived a need to return to the first entrance because the second was blocked.

Critically, unlike situations where an officer directly commands a suspect to stop, Wren's command was to other officers, *not Brummett himself*. Plainly, a directive leveled at an individual (and even a third party) may constitute a show of authority as it carries "an implied threat to use force if the command is disobeyed." *United States v. Alacron-Gonzalez*, 73 F.3d 289 (10th Cir. 1996) ("Although Alarcon-Gonzalez knew the command to 'freeze' was directed at Carcamo-Perez, he did not feel free to leave. The two roofers were only five feet apart, and were obviously working together. Under these circumstances, the command would communicate to both persons that they were not free to terminate the encounter." (citation omitted)); *see also United States v. Wood*, 981 F.2d 536 (D.C. Cir. 1992) (finding "show of authority" when officers commanded suspect to "stop," "halt right there" and significantly restricted suspect's movement). Wren certainly did not say, shout, or direct anything to Brummett himself; unequivocally, he communicated only to the other officers.

Officers did not display a weapon or make physical contact with Brummett. In fact, Brummett reversed course and pulled in before any officer reacted to Wren's dictate. Officers were in plain view at the residence, and they had executed a different search warrant there (and at his father's property) just 5 days prior. Although Defendant did pull into the drive, the record supports a finding that he did so voluntarily and not in response to a show of authority.

The Court notes that Brummett drove by the search scene, his own home, on Simpson Road, which the exhibits show as an isolated road in the Crab Orchard community. In driving past the home, Brummett effectively traced the boundary of the premises, placing himself within mere feet of the outer perimeter. Wren saw Brummett

and alerted officers, but Wren communicated nothing toward Brummett. If Brummett did hear and respond, his response exceeded what Wren communicated even to his own people. Wren did not shout out for Brummett to return or be returned to the premises he had just so closely skirted, and Brummett did not just stop, he affirmatively entered the site.

The defense did not cite but the Court is aware of cases dealing with seizure in the context of voluntary surrender to a known warrant. Thus, it can be true that if a target, aware of a warrant, turns himself in, a seizure occurs upon physical submission because of the target's response to known (if not directly expressed) law enforcement pursuit. *See White v. Wright,* 150 Fed. App'x 193, 197 (4th Cir. 2005) (discussing concept and quoting *Albright v. Oliver*, 114 S. Ct. 807, 812 (1994) (Justice Rehnquist, in an opinion for four justices, treating voluntary surrender to warrant as a "surrender to the State's show of authority [and thus] a seizure for purposes of the Fourth Amendment")); *Garrett v. Stanton*, No. 08-175-WS, 2009 WL 4258135, at *6 n.16 (S.D. Ala. No. 19, 2009) (collecting cases regarding seizure and self-surrender). Defendant may contend he heard Wren communicate to officers that police sought Brummett, thus making Brummett's return a seizure analog. The difference is that the cases cited treat seizure as occurring when police actually assume some measure of physical control over a defendant. *See White*, 150 Fed. App'x at 197 (noting defendant "detained briefly"); *Albright*, 114 S. Ct. at 268 (noting surrender then release on bail); *Groom v. Fickes*, 966 F. Supp. 1466, 1475 (S.D. Tex. 1997) (report to Marshal's office where target booked, fingerprinted, cuffed, and presented to magistrate judge); *Pomykacz v. Borough of West Wildhood*, 438 F. Supp. 2d 504, 508 (D.N.J. 2006)_(report to police station where target "booked" );

*Niemann v. Whalen*, 911 F. Supp. 656, 668 (S.D.N.Y. 1996) (report to police barracks for fingerprinting and then presentation to "Town Justice for arraignment"). Thus, when a target turns himself in at a courthouse for processing, the seizure, if one occurs, happens at formal processing, not when the target makes the decision to drive himself into the courthouse parking lot. At most, Brummett became aware that Wren wanted him stopped. Brummett's decision to return his car to the house was a voluntary step that placed the car within the scope of the warrant. Wren did not, as cautioned against in *Gentry*, forcibly lead Brummett back to the search site. Brummett drove just past the site and then returned to the scene on his own. Wren certainly seized Brummett when Defendant approached the porch; he informed him of arrest on the May 9 charges, and Brummett was not reasonably free to leave. *See White*, 150 Fed. App'x at 197. Up until that point, however, Brummett directed his own steps and conduct and was not seized. Wren directed no action toward Brummett by communicating with his officers. *See Brower*, 109 S. Ct. at 1381.

Finally, the Court points out several additional factors that would cut against suppression. Wren, based on the May 9 firearms seizure and confirmation of Brummett's felon status, obviously had probable cause to stop and arrest Defendant. Thus, he did not act improperly in directing officers to "get" or "stop" Defendant. Because Brummett pulled in so quickly, no officer even had time to respond to Wren's command. Thus, the case has utterly no hint of misconduct, subterfuge, or impropriety to remedy by exclusion. All authorities were there under a valid search warrant, and police did nothing untoward to bring Brummett onto the premises, his own property. Once Brummett

himself put his car there, police validly treated the warrant as applicable. No suppression values—deterrence and culpability—attend the May 14 scenario.

## 2. Officers reasonably believed that Brummett owned the gravel area on which he parked.

Defendant does not dispute that the gravel area where he parked leads to his residence. DE #39 (Reply). Indeed, Movant only alleges that the "first 20 to 30 feet of that driveway . . . are on Mr. Brummett's neighbor's property and not on Mr. Brummett's property." *Id.* Defendant testified at the hearing that the fence line that runs along the road in front of the property does not, despite appearances, delineate the boundaries between his property, the road, and his neighbor's property. Brummett relayed that, after purchasing the property, he walked the boundary line with his neighbor, who indicated that the fence, and some area within the fence, belongs to the neighbor. Defendant indicated that survey pins officially mark the boundaries.

The Court need not here determine the precise property lines, as officers reasonably believed the truck to be parked on Brummett's property. Movant alleges that he pulled into the driveway but not onto his property, remaining outside two large fence posts that belong to his neighbor. Hearing exhibit pictures and Wren's credible testimony reflect the truck parked within the premises' entry area, slightly inside the fence and gate. The Court so finds. *Compare* Defendant's Hrg. Ex. No. 2 (showing a fence post with a soda can in distance) *with* Defendant's Hrg. Ex. No. 5 (showing same soda can through car window); *see also* DE #38-4 (photo showing gravel lot). Other than Defendant's testimony regarding property lines, nothing in the record would suggest that the gravel lot fronting Brummett's property and seemingly encompassed in the property lines as determined by the PVA, is anything but Brummett's. Officers were reasonable to believe

22

that, when Brummett parked on the gravel entry, he stopped the truck on *his* property.

The overhead photos (Government's Hrg. Ex. No. 4, Defendant's Hrg. Ex. Nos. 1 and 4)

show a fully integrated parcel encompassing the graveled entrance area. Wren offered the

deed, which, in the Court's view, strongly suggests the road as the boundary in the area

concerned. Wren knew, from his own area knowledge, that the physical address included

both the residence and Brummett's adjoining business, all on the same parcel. Finally, as

a matter of common sense and Kentucky land-law experience, it would be highly unusual

for Brummett's boundary to be well inside the fenced area and for the neighbor's

property line to extend past the road and near to Brummett's dwelling. The PVA records,

a basis for tax treatment, certainly do not show that type of line.

In *United States v. Patterson*, officers searched a gravel area in front of a property

that was actually titled to the city. *United States v. Patterson*, 278 F.3d 315 (4th Cir.

2002). During surveillance, agents observed Patterson (and her guests) routinely use the

area for parking. Law enforcement ultimately executed a search warrant at Patterson's

residence and searched a vehicle associated with Patterson that was parked on the gravel

area under the (mistaken) belief that the gravel drive belong to Patterson. The Second

Circuit denied Patterson's effort to suppress:

> The only way the agents could have known that the gravel parking pad
> was actually titled in the city would have been to have had the land
> surveyed, but the Fourth Amendment does not require the officers to take
> such measures as a matter of course. *Cf. Maryland v. Garrison*, 107 S. Ct.
> 1013, 1019 n.14 (1987) (refusing to require police to conduct a
> preliminary survey of the premises in order to determine the precise scope
> of the warrant so long as police are otherwise able to obtain 'a reasonably
> detailed warrant'). Again, the touchstone of the Fourth Amendment
> inquiry is "sufficient probability, not certainty." *Id.* (internal quotation
> marks omitted). The agents in this case "act[ed] on facts leading sensibly
> to their conclusion []" that there was a sufficient probability that the gravel
> parking pad was part of the premises at 2502 Haden Avenue. *Id.* at 1018

n.18 (internal quotation marks omitted). Moreover, "the [agent's] conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched," *id.*, and thus their search did not violate the Fourth Amendment.

*Patterson*, 278 F.3d at 318.

Here, there is nothing (save for Defendant's incredible testimony) to indicate that the gravel pad is not Brummett's. Brummett does not deny that the gravel area provides ingress and egress to his residence. Wren testified that, prior to executing the warrant, he did not look up the deed, survey the property, or otherwise take any affirmative steps to determine the precise boundaries of Brummett's property. Such actions are generally unnecessary, however. *Patterson*, 278 F.3d at 318 (citing *Garrison*, 107 S. Ct. 1019 n.14). Wren later obtained the deed from the Clerk's office. Government's Hrg. Ex. No. 3. The deed, as buttressed by photos obtained from the PVA, *see* Government's Hrg. Ex. No. 4, do not support Brummett's articulation.

During the hearing, Defendant physically marked on Defendant's Hearing Exhibit Number 1 his understanding of the property line and the location of the truck on May 14 relative to those boundaries. *See* Defendant's Hrg. Ex. No. 1 (reflecting 3 blue ink dots representing pins and 1 large blue ink scribble representing truck location). Per Brummett, he technically parked the truck on his neighbor's property, though the gravel abuts and extends onto his property. Even assuming the accuracy of these markings, the record establishes agents' reasonable belief that the gravel area proximate to the fence and gate belonged to Brummett and thus fell within the scope of the warrant. *United States v. Stewart*, 129 Fed. App'x 758, 768 n.10 (4th Cir. 2005) (unpublished) ("Even if the shed was on another parcel, any error would not implicate the exclusionary rule because suppression is not required when agents executing a search warrant make an

objectively reasonable mistake as to the boundaries of the property that they are authorized to search.").

The fence line in question generally tracks the edge of Simpson Road and runs in a manner indicative of a traditional property boundary. The fence and gate cordoned off only Brummett's property, and the gravel lot certainly seems dedicated only to serve Brummett's land; such was the testimony. At no point in his encounter with officers on May 14 did Brummett indicate that the property was not his. Any understanding Defendant may have with his neighbor regarding the property lines is not controlling here. "This was not a situation where the officers searched an area they plainly should have known was unconnected to the premises identified in the warrant." *United States v. Jefferson*, No. 09-CR-18, 2010 WL 1186279, at *6 (E.D. Wisc. March 22, 2010). It was reasonable for Wren to believe that the gravel drive was Brummett's and thus fell within the scope of the warrant. Suppression is not, on this record, appropriate.[14] The issue really

---

[14] In light of the Court's disposition, it need not decide whether *Gant* would otherwise validate the search. Under *Gant*, a warrantless search of a vehicle incident to arrest violates the Fourth Amendment "unless 'the arrestee is within the reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.'" *United States v. Sain*, 421 Fed. App'x 591, 593 (6th Cir. 2011) (quoting *Gant*, 129 S. Ct. 1710 (2009)). Here, the United States conceded the first prong (since Wren arrested Brummett 50 feet from his car and felt no danger), but relied on Wren's testimony that, in his knowledge, training, and experience, persons who possess a large quantity of firearms (*e.g.,* the 150 Wren had seized days earlier from Brummett's residence) usually keep a firearm close, either on their person or in a vehicle. Defendant generally argued that Wren had no specific evidence that Brummett was a felon-in-possession on May 14, especially in light of the large firearm seizure 5 days prior. The Court declines to address the issue fully but has significant doubts about the analytical basis the United States, which would bear the burden, presents. *Gant*'s second exception hinges on reliable evidence gathering and requires that it be "reasonable to believe" the vehicle "contains evidence of the offense of arrest." Here, the offense of arrest expressly was the May 9 felon-in-possession state charges. While Wren generally opined that persons possessing firearms tend to repeat the conduct, that is not the same as saying Brummett likely had in his car on May 14 evidence of the crimes committed on May 9, the temporally remote crimes of arrest. This is a vein of

is one of constitutional warrant execution standards. Here, where probability is the touchstone of reasonableness, per *Garrison*, the objective evidence available to officers suggested no distinction between Brummett's property and the truck location. Any mistake, and the Court doubts there was one, was reasonable.

## III.    Recommendation

For the reasons stated, the Court **RECOMMENDS** that the District Judge entirely **DENY** Brummett's pending motion to suppress (DE #34).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. The parties should consult the aforementioned statute and Federal Rule of Criminal Procedure 59(b) for specific appeal rights and mechanics. Failure to object in accordance with the rule waives a party's right to review.

This the 2d day of May, 2014.

Signed By:

*Robert E. Wier*    ℛℰⱲ

**United States Magistrate Judge**

---

proof distinct from the evidence Wren's opinion supports. His evidence goes more toward whether there would be independent probable cause as to the vehicle, which is not the claim the United States made. Though Wren left ammunition at Brummett's on May 9, the United States did not effectively articulate or argue the ammunition as connecting under *Gant*. Nonetheless, because the warrant supports the search, the Court does not resolve the *Gant* exception theory.

The Court has some concern about Wren's familiarity with *Gant*'s contours, given his stated practice of universally searching vehicles incident to arrest. *Gant* does not square with such a blanket policy.